## CABLE *v.* PAINE & Co. and others.

*(Circuit Court, D. Iowa, C. D.   September 5, 1881.)*

1. EVIDENCE—WITNESSES—PRINCIPAL AND AGENT—IMPLIED AUTHORITY.

    Where the evidence is contradictory and conflicting, it is no error to charge that "where there are witnesses in the case of equal intelligence, and with equal opportunities of knowledge of the facts, some of whom testify to acts done, and conversations and declarations had, giving in detail a full account of such acts, conversations, or declarations occurring in their presence, or done or uttered by them; and others, who testify that they have no recollection that such acts were done, or conversations or declarations uttered,—the affirmative testimony is, or ought to be, of greater weight in the minds of the jury than the negative testimony. Nor is there any error in an instruction that a general agent for the sale of manufactured lumber, etc., has no implied authority to enter into contracts for his principal for the sale of timber in the rough.

2. SAME—LETTER-PRESS COPIES.

    The exclusion of letter-press copies, though no notice to produce the originals had been given, *held* to be sufficient reason for a new trial, where the trial was before a judge, temporarily assigned, and where it is insisted that a rule had been established in the district, with the concurrence of all the judges, making them admissible in evidence without such notice.

On Motion for New Trial.

*Davison & Lane*, for plaintiff.

*J. C. Bills* and *Hubbard, Clark & Dawley*, for defendants.

NELSON, D. J.   This is a suit to recover damages on a contract to sell logs.   The contract was made and signed in the name of the defendants by one Idison, who is alleged to have been the duly authorized agent of the defendants to sign such contract.   The defendants deny that Idison had any such authority to make or sign the contract, and they also further aver that the contract was signed with the understanding that if not satisfactory to the defendants it should be called off.

The defendants C. N. Paine & Co. were engaged in the manufacture of pine lumber, flooring, doors, sash, and shingles, and sawed lumber, at Oshkosh, in the state of Wisconsin.   They also had a mill at Merrillon, in that state, and a lumber-yard in the state of Nebraska. Idison was their traveling agent, and there is evidence tending to show that he was selling, outside of the state of Wisconsin, materials, flooring, finishing lumber, as it is called, and also evidence tending to show that he had purchased from Hornby & Cable, on several occasions, sawed lumber and lumber manufactured by them; and that Paine & Co. had paid for the lumber so purchased by Idison.   Previous to April 2, 1877, in the latter part of March, Idison was in Davenport, in communication with the plaintiffs, and the result was that he signed to the contract for the sale of logs, and which was offered in evidence, the name of C. N. Paine & Co.   The authority of Idison was the chief issue, and the jury rendered a verdict for the defendants.

A motion is made for a new trial.   The errors of the charge are urged by counsel to be :   *First,* in stating that—

"There is a rule which will guide a jury in weighing and giving effect to evidence, and aid them to reconcile evidence which is contradictory and conflicting.   It is this: Where there are witnesses in the case of equal intelligence, and with equal opportunities of knowledge of the facts, some of whom testify to acts done, and conversations and declarations had, giving in detail a full account of such acts, conversations, or declarations occurring in their presence, or done or uttered by them; and others, who testify that they have no recollection that such acts were done, or conversations or declarations uttered— the affirmative testimony is, or ought to be, of greater weight in the minds of the jury than the negative testimony.   To reject the affirmative testimony you will determine that the witnesses manufactured the evidence which they have given; while, in the other case, the want of recollection that such acts were done, or such conversations or declarations were uttered, may be attributed to the infirmaties of the human mind.   I do not say that this rule is to be followed by juries without deviation; but it may be applied."

It was proper for the court to give this instruction; the rule is elementary, and is thus stated by Starkie on Evidence, vol. 1, p. 578 :

"If one witness were positively to swear that he saw or heard a fact, and another were to swear that he was present but did not hear or see it, and the witnesses were equally faithworthy, the general principle would, in ordinary cases, create a preponderance in favor of the affirmative; for it would usually happen that a witness who swore positively, minutely, and circumstantially, to a fact which was untrue, would be guilty of perjury; but it would by no means follow that a witness who swore negatively would be perjured, although the affirmative were true," etc.

This rule was applicable to a portion of the evidence of G. M. Paine, who testified about the conversation had with plaintiff at Merrillon, in November, 1877, when called to contradict the latter, and also to the evidence of Freeman, who was called to contradict Idison.

*Second.* The next error alleged is in the following instruction to the jury:

"There is no evidence of a direct appointment of Idison as the agent of C. N. Paine & Co., the defendants, giving him, in express language, authority to sell the logs mentioned in the contract, and the logs were not in his possession or under his immediate control at the time the contract was entered into. The plaintiff claims that the fact that Idison was the agent of defendants for the sale of their manufactured lumber outside of the state of Wisconsin, and the further fact that he had purchased sawed lumber from the plaintiff, and had traded for or purchased lumber—or finishing lumber, as it is called—from other persons for his employers, all of which transactions and acts had been recognized by the defendants, gave an implied authority to sell the logs mentioned in the contract, and to enter into it. Such is not the law. Authority in Idison to sign the defendants' name to the contract cannot be implied simply from the acts and transactions which I have detailed to you and which are in evidence. It is necessary for the plaintiff to show the acts of Idison with reference to this particular contract, and a recognition of these acts on the part of the defendants, in order to prove that he had authority to sell the logs and to sign the defendants' name to the contract for their sale. The fact that he was their traveling agent for the sale of manufactured lumber, and that he contracted with other persons for the purchase from the defendants of their sawed lumber, is not sufficient evidence for you to imply that he had authority to enter into this particular contract. The acts of Idison with reference to these logs, and the recognition of them on the part of the defendants, must be proved in order to establish his agency to sell the logs and to enter into this contract in the first instance."

I am satisfied this instruction fairly presented the case. An agency is created by (direct) express appointment, or it may be inferred from the relation of the parties, and the nature of the employment, without proof of any express appointment. So says Chancellor Kent, vol. 2, p. 613, (4th Ed.)

This question controlled the verdict: Was the contract for the sale

of the logs binding upon Paine & Co.? There was no evidence of the express (direct) appointment of Idison to sell them. His authority could only be inferred from the relation of the parties, or proved by the subsequent ratification of the contract. Briefly, the court instructed the jury that the relation of the parties, (Idison being defendants' general agent for the sale of manufactured lumber, sash, doors, etc.,) did not authorize him to make the contract, and left the question of ratification to the jury, omitting such of the instructions asked not pertinent to the case. Neither abstract questions of law were given, nor the exact language of plaintiff's requests.

In reference to the claim urged, that defendants, with full knowledge of Idison's act, and with a copy of the contract in their possession, by acquiescence, had ratified it, the court, in substance, said: When information is given of the action of an agent who exceeds his authority, it is the duty of the principal, as soon as possible, to repudiate it. It is not fair dealing, under such circumstances, to reject the contract and not inform the other party, (as the plaintiff in this case,) of its repudiation. This covered the request asked, and I see no error in the instruction. In fact, I am satisfied with the charge, as a whole, and think the case was fairly placed before the jury, according to the testimony. There is, however, a troublesome feature of the case, and a new trial should be granted.

The plaintiff offered certain letter-press copies of his own letters, containing competent and material evidence. No notice to produce the originals had been given, and they were excluded.

On the trial plaintiff's counsel stated, and now reiterates, that the rule had been established in the Iowa district, with the concurrence of all the judges, "that letter-press copies made at the time of letters written and sent by mail between parties to a suit are not copies in the sense of the rule requiring notice, but are duplicate originals." I declined to recognize any such rule, but offered to withdraw a juror and postpone the trial to the next term; but for some reason the counsel determined to proceed and accept the decision. I was under the impression at the time that the amount involved would permit a writ of error, and the plaintiff, in case of an adverse verdict, could take advantage of this ruling against him. It now appears the judgment of this court is conclusive, and while I am of the opinion that the copies were properly excluded and if a writ of error could be taken would not disturb the verdict, yet there is a possibility of error in rejecting the evidence. The counsel asseverates that my opinion is in conflict with all the judges of the Iowa district. A

judgment obtained under these circumstances, and no opportunity to review the decision, is not satisfactory and may be unjust. It makes no difference that the plaintiff rejected the offer to postpone the case. The judgment may be the result of a conflict in opinion between the judge presiding at the trial and the other judges of the court, and the plaintiff unable to ascertain which is correct. A new trial is granted, and it is so ordered.